

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>RAYMOND BELL,<br><br>Defendant/Movant. | Cause No. CR 09-14-H-DWM<br>CV 13-47-H-DWM<br><br>ORDER DENYING § 2255 MOTION<br>AND GRANTING CERTIFICATE<br>OF APPEALABILITY |

On August 5, 2013, Defendant Raymond Bell filed a motion to vacate, set

aside, or correct his sentence under 28 U.S.C. § 2255. Bell is a federal prisoner

proceeding pro se.

## I. Background and Bell's Claim

At his sentencing in 2010, Bell was designated a career offender under

U.S.S.G. § 4B1.1 based in part on a first-degree burglary conviction under

California Penal Code § 459. *See* Presentence Report ¶¶ 18, 24. The designation

added 8 levels to his total offense level, *id.* ¶¶ 15, 21, effectively raising his

guideline range from 92-115 months to 188-235 months. Bell was sentenced below

the advisory guidelines range to a term of 150 months in prison, to be followed by

1

a 5-year term of supervised release. Judgment (Doc. 85) at 2-3. He appealed his career-offender designation on direct review. The issue was resolved against him, and his sentence was affirmed. *See* Mem. at 2, *United States v. Bell*, No. 10-30156 (9th Cir. Nov. 29, 2011) (citing *United States v. Park*, 649 F.3d 1175, 1179 (9th Cir. 2011)) (Doc. 105). On April 2, 2012, the United States Supreme Court denied Bell's petition for writ of certiorari. *Bell v. United States*, __ U.S. __, 132 S. Ct. 1875 (2012); Letter (Doc. 108).

In a collateral challenge to his sentence under 28 U.S.C. § 2255, Bell now argues that the Supreme Court's decision in *Descamps v. United States*, __ U.S. __, 133 S. Ct. 2276 (2013), "overrules precedent" and he "is no longer guilty of the career offenders act." Mot. § 2255 (Doc. 109) at 4. Issued on June 20, 2013, *Descamps* held that a conviction under California Penal Code § 459 categorically is not "burglary" within the meaning of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii). *Descamps*, 133 S. Ct. at 2293.

At first glance, *Descamps* may seem inapposite to Bell's case. Bell's case presented a guideline issue, not an issue under 18 U.S.C. § 924(e)(2)(B)(ii) or the ACCA generally. He was not in any way declared "guilty" of "the career offenders act."

But, under circuit precedent, the categorical method governs application of sentencing guidelines as well as statutes. *United States v. Crews*, 621 F.3d 849,

851 (9th Cir. 2010); *United States v. Pimentel-Flores*, 339 F.3d 959, 968 (9th Cir. 2003). Just as the ACCA requires a sentencing court to decide whether a prior conviction was a "violent felony," several guidelines require sentencing courts to decide whether a prior conviction was a "crime of violence." *See, e.g.*, U.S.S.G. §§ 2K1.3(a)(3), 2K2.1(a), 2L1.2(b)(1)(A)(ii), 2S1.1(b)(1)(B)(ii), 4B1.2(a)(2). Accordingly, since *Descamps* was issued, the Ninth Circuit has extended its reasoning to cases, like Bell's, decided under the Sentencing Guidelines, *see United States v. Acosta-Chavez*, 727 F.3d 903, 906-09 (9th Cir. 2013) (U.S.S.G. § 2L1.2), and specifically to cases, like Bell's, decided under the career offender guideline, *see United States v. Spencer*, 724 F.3d 1133, 1137 (9th Cir. 2013) (U.S.S.G. § 4B1.2(a)(2)).

Thus, because *Descamps* corrected the Ninth Circuit's application of the categorical method, it applies to guidelines cases as well as cases decided under the ACCA or another federal statute. *See Descamps*, 133 S. Ct. at 2282-83 & n.1, 2286-91 (abrogating *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 917-40 (9th Cir. 2011) (en banc) (applying § 2L1.2), and *United States v. Armstead*, 467 F.3d 943, 947-48 (6th Cir. 2006) (applying § 4B1.2(a)(2))).

## II. Is Bell's Sentence Subject to Collateral Attack?

### A. 28 U.S.C. § 2255(a)

A defendant may move to "vacate, set aside, or correct" a federal sentence

under 28 U.S.C. § 2255(a) where he claims his sentence "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Bell asks the Court to "correct" his federal sentence to give the appropriate effect to his criminal history.

It would seem that if any component of a federal sentence could be finally final, it would be criminal history and its meaning. But in 2005, the Supreme Court described its prior cases as acknowledging that a defendant sentenced in federal court as a career offender or armed career criminal could be re-sentenced under § 2255 if, *after* his federal sentencing, one or more of the predicate prior convictions supporting the federal sentencing enhancement was vacated. *Johnson v. United States*, 544 U.S. 295, 303-04 (2005) (discussing *Daniels v. United States*, 532 U.S. 374, 381 (2001), and *Custis v. United States*, 511 U.S. 485, 497 (1994)). Before *Johnson*, the Ninth Circuit, along with at least the First, Second, Fourth, Fifth, and Tenth Circuits, had already recognized that "a defendant who successfully attacks a state conviction may seek review of any federal sentence that was enhanced because of the prior state conviction." *United States v. LaValle*, 175 F.3d 1106, 1108 (9th Cir. 1999); *Farrow v. United States*, 580 F.2d 1339, 1345 (9th Cir. 1978) (en banc). In these cases, a federal sentence, though perfectly correct when imposed, became open to collateral challenge when a conviction used to support an enhancement of the federal sentence was vacated, even though the vacatur

4

occurred after the federal sentence was "final."

Bell's case is not identical. He does not claim that a prior state conviction giving rise to his federal sentencing enhancement was later vacated; he claims the prior conviction never should have been counted in the first place. But that arguably makes his claim to equitable relief stronger. If Bell is right about the application of *Descamps*, then – unlike Johnson, Custis, Daniels, and LaValle – Bell is serving a federal sentence that was *incorrect* when it was imposed. If a sentence that was correct when it was imposed can later be refashioned to maintain its correctness, it would be strange to conclude that an incorrect sentence can never be made correct.

Nor is a showing of constitutional error by the sentencing court a necessary element of a § 2255 motion.[1] Although there is ample authority holding that "nonconstitutional sentencing errors" cannot be challenged under § 2255, that is because these errors are waived "if such errors were not challenged in an earlier proceeding," that is, on direct review. *E.g.*, *United States v. Gianelli*, 542 F.3d 1178, 1184 (9th Cir. 2008); *United States v. McMullen*, 98 F.3d 1155, 1157 (9th

---

[1] One could argue that Bell's claim is of constitutional dimension. If *Descamps* applies, then Bell's sentence was based on "misinformation of constitutional magnitude," *United States v. Addonizio*, 442 U.S. 178, 187 (1979), because he was not, in fact, "convicted, in the deliberate and considered way the Constitution guarantees, of an offense," *Descamps*, 133 S. Ct. at 2290, that fits the guideline's definition of a "crime of violence." Moreover, it is fundamentally unfair to deprive a defendant of relief if he complied with the applicable procedural requirements and it was the court that erred. But there is no need to decide these matters, because it is sufficiently clear that Bell alleges a violation of the "laws of the United States." His claim is cognizable under § 2255.

5

Cir. 1996); *United States v. Schlesinger*, 49 F.3d 483, 485 (9th Cir. 1995). Bell did

not waive his claim that his conviction under California Penal Code § 459 did not

constitute a "crime of violence."[2] The fact that the Court of Appeals has already

decided Bell's claim may indeed pose an obstacle, but at this point the question is

simply whether the claim is properly brought in a motion under § 2255. It is,

because Bell claims his sentence was imposed in violation of the Sentencing

Guidelines, which are laws of the United States.

### B. Retroactivity

This case involves no issue concerning the "retroactive" application of

*Descamps*. The Supreme Court has "laid out the framework to be used in

determining whether a rule announced in one of our opinions should be applied

retroactively to judgments in criminal cases that are already final on direct

review":

> Under the *Teague* framework, an old rule applies both on direct and
> collateral review, but a new rule is generally applicable only to cases
> that are still on direct review. A new rule applies retroactively in a

---

[2] In the context of collateral review, this form of waiver is more commonly referred to as procedural default. Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" or actual innocence to excuse the default. *Massaro v. United States*, 538 U.S. 500, 504 (2003) (excepting claims of ineffective assistance of counsel from the general rule); *see also Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *Sunal v. Large*, 332 U.S. 174, 178-79 (1947) (explaining that collateral review is not available to "do service for an appeal" or to address "errors of law committed by the trial court"). As Bell's counsel pressed his instant claim on direct review, he is not using § 2255 as a substitute for appeal or to obtain review of an error committed (only) in this Court. Other doctrines, viz., law of the case and law of the circuit, as explained below, may foreclose Bell's challenge to his sentence, but waiver or procedural default does not.

6

collateral proceeding only if (1) the rule is substantive or (2) the rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.

*Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (internal quotation marks and brackets omitted) (describing *Teague v. Lane*, 489 U.S. 288 (1989)).

The first step in the *Teague* analysis is to determine whether the rule announced is new or old. A new rule "breaks new ground," "imposes a new obligation on the States or the Federal Government," or is otherwise not "*dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301 (emphasis in original). The *Descamps* Court clearly communicated its belief that its ruling in the case was "dictated" by existing precedent. *E.g.*, *Descamps*, 133 S. Ct. at 2283 ("Our caselaw explaining the categorical approach and its 'modified' counterpart all but resolves this case."); *id.* at 2285 (describing the Court's prior applications of the modified categorical approach as "the only way we have ever allowed" that approach to be applied); *id.* at 2286 ("We know Descamps' crime of conviction, and it does not correspond to the relevant generic offense. Under our prior decisions, the inquiry is over."); *id.* at 2286 (describing Ninth Circuit's analysis as "[d]ismissing everything we have said on the subject"); *id.* at 2288 (describing Ninth Circuit's analysis as "flout[ing] our reasoning"). The most recent of the cases relied on by the *Descamps* Court – *Johnson v. United States*, 559 U.S. 133 (2010) – was decided well before November 29, 2011, the

7

date the Ninth Circuit affirmed Bell's sentence.

It is impossible to avoid the conclusion that the rule of *Descamps* was dictated by precedent already existing when Bell's conviction became final. Because it reiterated an old rule, *Descamps* need not meet the special tests of *Teague* and need not be declared by the Supreme Court to be retroactive in order to apply to cases on collateral review. *Descamps* applies to all cases where it is pertinent, whether on direct or on collateral review.

### C. Conclusion

Bell's claim is appropriately raised on collateral attack under § 2255.

### III. Timeliness of the § 2255 Motion

Although § 2255 may provide relief, Bell's motion may be time-barred. 28 U.S.C. § 2255(f) provides:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1)  the date on which the judgment of conviction becomes final;
>
> (2)  the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3)  the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4)  the date on which the facts supporting the claim or claims

presented could have been discovered through the exercise of due diligence.

Bell's conviction was final on April 2, 2012. He filed his § 2255 motion more than a year later, 28 U.S.C. § 2255(f)(1), on July 29, 2013. Mot. § 2255 (Doc. 109) at 6; *Houston v. Lack*, 487 U.S. 266, 270-71 (1988). But, if circuit precedent was inconsistent with the "laws of the United States" or if the overruling of circuit precedent is a "fact," then the limitations period began to run when *Descamps* was decided. Or, as Bell suggests, he may be "no longer guilty" of the career offender enhancement. *See McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1927 (2013); *but see Marrero v. Ives*, 682 F.3d 1190, 1193-95 (9th Cir. 2012).

Even assuming, however, that the limitations period commenced when Bell's conviction became final, equitable tolling might apply. The motion could not be dismissed as untimely without first giving Bell an opportunity to respond, *Herbst v. Cook*, 260 F.3d 1039, 1043-44 (9th Cir. 2001), and the surest way to decide whether Bell's motion is timely is to appoint counsel and set a hearing.

Yet that would be a poor use of scarce resources if Bell is not entitled to relief in the first place. Because there is an insurmountable obstacle to further proceedings in this Court at this time, it is assumed, without deciding, that Bell's motion was timely filed.

## IV. Law of the Case and Law of the Circuit

Acknowledging that § 2255 is available to Bell, and assuming his motion is timely, the question is whether *Descamps* means Bell should be re-sentenced without deeming his conviction under California Penal Code § 459 a "crime of violence" under U.S.S.G. § 4B1.2(a). Bell would be entitled to re-sentencing if his case is directly controlled by *Descamps* or if the reasoning of *Descamps* mandates a conclusion that any burglary conviction based on a statute that is indivisible and does not contain all the elements of generic burglary also cannot be a "crime of violence" under the residual clause of § 4B1.2(a)(2).

The question is answered by two doctrines: the law of the case and the law of the circuit.

### A. The Doctrines

Generally, "[t]he law of the case doctrine states that the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case." *Jeffries v. Wood*, 114 F.3d 1484, 1489 & n.1 (9th Cir. 1997) (en banc) (internal quotation omitted), *overruled by Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012) (en banc) (limiting application of *Jeffries* to law of the case rather than law of the circuit). The law of the circuit doctrine generally holds that, for district courts in the Ninth Circuit as well as three-judge appellate panels, "a published decision of [the Ninth Circuit Court of Appeals] constitutes binding

10

authority which must be followed." *United States v. Vasquez-Cruz*, 692 F.3d 1001, 1006 (9th Cir. 2012) (internal quotation marks and citation omitted). A lower court, or even a subsequent appellate panel, cannot simply change the law of the case or the law of the circuit. *E.g., United States v. Scrivner*, 189 F.3d 825, 827-28 (9th Cir. 1999); *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979).[3]

Both doctrines are jurisprudential, not jurisdictional. They "express[] the practice of courts generally to refuse to reopen what has been decided," but these pragmatic doctrines are not "a limit on the[] power" of a court. *Jeffries*, 114 F.3d at 1489. Consequently, both are subject to exceptions. Both doctrines recognize that reconsideration of a particular decision is appropriate where "the relevant court of last resort" has issued "intervening controlling authority" or has "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Gonzalez*, 677 F.3d at 389 n.4 (quoting *Jeffries*, 114 F.3d at 1489, and *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc)). When these conditions are met, district courts "*should* consider themselves

---

[3] *Res judicata* does not apply in habeas proceedings (at least not in the usual way), *Schlup v. Delo*, 513 U.S. 298, 319 (1995), but the law of the case and law of the circuit doctrines do. The procedural history of *Scrivner* illustrates this proposition. Initially, the panel said that "[d]ecisions of courts on direct appeal are not law of the case upon courts reviewing the matter for habeas." *Scrivner*, 167 F.3d 525, 529 (9th Cir. Feb. 5, 1999). But that opinion was withdrawn on March 29, 1999, *see* 167 F.3d 536, 536 (9th Cir. 1999), and reissued on September 1, 1999. The final decision concludes, "Scrivner's Fifth Amendment claim was presented to this court on direct appeal . . . and rejected on the merits. That decision is binding on our resolution of the case." *Scrivner*, 189 F.3d 825, 828 (9th Cir. 1999) (quoting *Odom v. United States*, 455 F.2d 159, 160 (9th Cir. 1972) ("The law in this circuit is clear that when a matter has been decided adversely on appeal from a conviction, it cannot be litigated again on a 2255 motion.")).

bound by the intervening higher authority and reject the prior opinion of [the appellate] court as having been effectively overruled." *Id.* (emphasis added).

Thus, to determine whether Bell should be re-sentenced, this Court must determine whether *Descamps* is "clearly irreconcilable" with the circuit precedent followed in Bell's case on direct review or, in other words, whether *Descamps* actually controls Bell's case.

### B. The Supreme Court's Decision in *Descamps*

The question in *Descamps* was whether a conviction for first-degree burglary under California Penal Code § 459 constituted "burglary" within the meaning of the ACCA. The federal statute at issue provided, in pertinent part:

> (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions . . . for a violent felony . . . such person shall be fined under this title and imprisoned not less than fifteen years[.]
>
> (2) As used in this subsection-- . . .
>
> > (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that –
> >
> > > (ii) is *burglary*, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(1), (2)(B)(ii) (emphasis added).

As *Descamps* explained, to determine whether a prior conviction is the equivalent of burglary, arson, or extortion as listed in the ACCA, sentencing courts

12

may "look only to the statutory definitions – i.e., the elements – of a defendant's prior offenses, and *not* to the particular facts underlying those convictions." *Descamps*, 133 S. Ct. at 2283 (quoting in *Taylor v. United States*, 495 U.S. 575, 600 (1990)) (internal quotation marks omitted) (emphasis in *Descamps*).

The *Taylor* Court defined "burglary" as used in § 924(e)(2)(B)(ii) in "generic" terms as having at least the "elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Taylor*, 495 U.S. at 599. Thus, a prior conviction will qualify as a burglary "if . . . its statutory definition substantially corresponds to 'generic' burglary," *id.* at 602, or as arson if its statutory definition substantially corresponds to "generic" arson, and the like. But if the statutory elements are fewer or broader than generic burglary and will necessarily capture some conduct that is not generic burglary, then the prior conviction will not count.

What if a statutory definition of burglary lists potential elements in the alternative, and one alternative corresponds to generic burglary but another does not? This might occur where, for instance, state law recognizes that unlawful entry might be made into either a building or structure or a vehicle. In that case, the statute cannot, by itself, show whether the defendant was actually convicted of generic burglary (i.e., of a building or structure) or of something other than that. A statute that takes this form is "divisible" into alternative sets of elements. *Taylor*

13

recognized, and *Shepard v. United States*, 544 U.S. 13 (2005), implemented, a "modification" of the categorical approach, allowing a sentencing court to consult "the charging paper and jury instructions" (or plea agreement and colloquy) to determine which part of the statute was alleged and proved to have been violated. *Taylor*, 495 U.S. at 602. The modified categorical approach, in other words, is used only where a statute is divisible, and then only "to determine which *statutory phrase* was the basis for the conviction," *Johnson*, 559 U.S. at 144 (emphasis added), not to determine whether the facts underlying the prior conviction did indeed constitute the generic offense.

Turning to the statutory definition at hand in *Descamps*, the Court found that California Penal Code § 459 provides that a person commits burglary when he "enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building . . . with intent to commit grand or petit larceny or any felony." In the first degree in California, burglary requires entry into an inhabited dwelling with the intent to commit theft or a felony. *People v. Anderson*, 211 P.3d 584, 589 (Cal. 2009), *cited in United States v. Park*, 649 F.3d 1175, 1178 (9th Cir. 2011); *see also* Cal. Penal Code § 460(a). But neither first-degree nor lesser burglary, under California law, requires the defendant's entry or remaining to be *unlawful* or *unprivileged*. Because unlawful or unprivileged entry or remaining is an element of generic burglary, and because California's definition of

14

burglary omits that element, a conviction under the statute does not constitute

generic burglary. *See Taylor*, 495 U.S. at 591; *Descamps*, 133 S. Ct. at 2283. The

*Descamps* Court concluded:

> Whether Descamps *did* break and enter makes no difference. And
> likewise, whether he ever admitted to breaking and entering is
> irrelevant. Our decisions authorize review of the plea colloquy or
> other approved extra-statutory documents only when a statute defines
> burglary not (as here) overbroadly, but instead alternatively, with one
> statutory phrase corresponding to the generic crime and another not.
> In that circumstance, a court may look to the additional documents to
> determine which of the statutory offenses (generic or non-generic)
> formed the basis of the defendant's conviction. But here no
> uncertainty of that kind exists, and so the categorical approach needs
> no help from its modified partner. We know Descamps' crime of
> conviction, and it does not correspond to the relevant generic offense.
> Under our prior decisions, the inquiry is over.

*Descamps*, 133 S. Ct. at 2286. In other words, for purposes of federal sentencing

law, a conviction under California Penal Code § 459 categorically is not burglary.

Thus, the decision below, which concluded that Descamps' "guilty plea and

conviction necessarily rested on *facts* that satisfy the elements of the generic

definition of burglary," *Descamps*, 466 Fed. Appx. 563, 565 (9th Cir. 2012)

(emphasis added), was categorically wrong.

But could Descamps' conviction, nevertheless, be a "violent felony" under

the residual clause of the ACCA? On that question, the *Descamps* Court merely

noted that "[t]he Government . . . forfeited an alternative argument that § 459

qualifies as a predicate offense under ACCA's 'residual clause,' which covers

15

statutes 'involv[ing] conduct that presents a serious potential risk of physical injury to another.'" *Descamps*, 133 S. Ct. at 2293 n.6. The Court "express[ed] no view on that argument's merits." *Id.*

### C. The Ninth Circuit's Decision of Bell's Direct Appeal

On direct review in Bell's case, the Court of Appeals did not hold that Bell's conviction under California Penal Code § 459 was a "crime of violence" based on the specific crimes listed in U.S.S.G. § 4B1.2(a)(2). Instead, the court followed *United States v. Park*, 649 F.3d 1175 (9th Cir. 2011).

*Park* held that a first-degree burglary conviction under California Penal Code § 459 is a "crime of violence" under the "residual clause" of the career offender guideline. *Id.* at 1177. The career offender guideline, in language similar to that of the ACCA, defines a "crime of violence" as one that is "burglary of a dwelling, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*." U.S.S.G. § 4B1.2(a)(2) (emphasis added). *See* Mem. at 2, *Bell*, No. 10-30156 (9th Cir. Nov. 29, 2011) (quoting *Park*, 649 F.3d at 1178).

*Park* is the law of the circuit. That Bell's case is controlled by *Park* became law of the case on direct review. The question, therefore, is whether *Descamps* and *Park* are so clearly irreconcilable as to make it incumbent on this Court to set aside both the law of the case and the law of the circuit in order to follow the intervening

16

controlling authority of *Descamps*.

### D. Are *Descamps* and *Park* "Clearly Irreconcilable"?

The key question in *Descamps* – whether the modified categorical approach could be applied to an indivisible statute such as California Penal Code § 459 – does not arise in any case under the residual clause of § 4B1.2(a)(2). *Park* instead followed the Supreme Court's decisions in *James v. United States*, 550 U.S. 192 (2007), *Begay v. United States*, 553 U.S. 137 (2008), and *Sykes v. United States*, __ U.S. __, 131 S. Ct. 2267 (2011). Those three cases, like *Taylor* and *Descamps*, used the categorical approach and focused exclusively on the elements of the prior conviction. But *James*, *Begay*, and *Sykes* raised no question of the divisibility or indivisibility of statutes, because applying the residual clause does not require the sentencing court to compare the elements of the prior conviction to a specified "generic" offense. Consequently, there was no question in those cases of using a "modified" categorical approach either.

To determine whether a prior conviction is a "violent felony" or a "crime of violence" under a residual clause of a federal statute or guideline, the sentencing court asks whether the elements of the statute underlying the prior conviction "involve[] conduct that presents a serious potential risk of physical injury to another," *James*, 550 U.S. at 208, and whether the offense is "roughly similar" to the enumerated generic offenses in the sense that it "typically involve[s]

17

purposeful, violent, and aggressive conduct," *Begay*, 553 U.S. at 144-45 (internal quotation marks omitted). Applying these criteria, *Park* held that a first-degree burglary conviction under California Penal Code § 459 fits into the residual clause. Although it does not require an unlawful or unprivileged entry, in contrast to generic burglary, a first-degree burglary conviction in California requires entry into an "inhabited dwelling" with the intent to commit theft or a felony. *Anderson*, 211 P.3d at 589, *cited in Park*, 649 F.3d at 1178. Quoting a California state court's description of the distinction between first- and second-degree burglary, the *Park* court emphasized the "peculiar risks of violence and resulting injury which inhere in the burglary of a home." *Park*, 649 F.3d at 1179 (quoting *People v. Rodriguez*, 18 Cal. Rptr. 3d 550, 558 (Cal. Ct. App. 2004)) (internal emphasis omitted). Thus, Park's conviction necessarily involved conduct posing a serious potential risk of physical injury to another. Further, and again because the prior conviction required entry or remaining in an inhabited dwelling with criminal intent, the court also found the second step of the test met. *Park*, 649 F.3d at 1180 (quoting *Sykes*, 131 S. Ct. at 2275 ("[i]n many cases the purposeful, violent, and aggressive inquiry will be redundant with the inquiry into risk."))[4] Because *Park* followed *James*, *Begay*, and *Sykes*, and because the majority in *Descamps* does not so much as mention

---

[4] Though not discussed in *Park*, it may be worth pointing out that the maximum prison term for first-degree burglary in California is six years. Cal. Penal Code § 461. The term seems lenient for conduct that truly is "typically . . . purposeful, violent, and aggressive."

18

those cases, it cannot be said that *Park* is "clearly irreconcilable" with *Descamps*.

Comparing *Descamps* and *Park*, two further considerations arise. First, it is clear that the categorical approach applies "to determine whether a defendant's prior conviction satisfies the Guidelines definition of a crime of violence." *Spencer*, 724 F.3d at 1137 (quoting *Crews*, 621 F.3d at 851); *see also United States v. Becker*, 919 F.2d 568, 569 n.2, 570-73 & nn.5 & 9 (9th Cir. 1990). But courts decided to use the categorical approach under the guidelines before the significant developments in Sixth Amendment jurisprudence over the last twenty years. Those developments draw a sharp distinction between a sentencing court's factfinding for purposes of determining a statutory penalty range and the same court's factfinding for purposes of determining a guideline sentencing range *within* the statutory penalty range. *Compare Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."), *with Rita v. United States*, 551 U.S. 338, 351 (2007) ("the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure."). Because a sentencing court's finding of a predicate offense under the Armed Career Criminal Act "indisputably increases the maximum penalty," such a finding would "raise serious Sixth Amendment concerns if it went beyond merely identifying a prior

conviction." *Descamps*, 133 S. Ct. at 2288 (discussing *Apprendi*); *see also Shepard v. United States*, 544 U.S. 13, 24-26 (2005); *Taylor*, 495 U.S. at 601. Likewise, a sentencing court's finding of a fact triggering a statutory mandatory minimum penalty "produces a new penalty and constitutes an ingredient of the offense" that must be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, __ U.S. __, 133 S. Ct. 2151, 2160 (2013) (overruling *Harris v. United States*, 536 U.S. 545, 568-69 (2002)).

But "broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Alleyne*, 133 S. Ct. at 2163. A sentencing court's finding on a guidelines issue neither raises the statutory maximum penalty nor imposes a mandatory minimum. *Booker v. United States*, 543 U.S. 220, 259 (2005). It may well be appropriate to apply a "clear and convincing" standard to a factual finding under the career offender guideline, *e.g.*, *United States v. Pineda-Doval*, 614 F.3d 1019, 1040-41 (9th Cir. 2010); *cf. Nijhawan v. Holder*, 557 U.S. 29, 42-43 (2009), but that would be a question of proof, not of statutory analysis. "[T]he categorical approach's Sixth Amendment underpinnings," *Descamps*, 133 S. Ct. at 2288, simply are not implicated under the career offender guideline. Thus, the *Descamps* Court's rationale for *not* going "beyond merely identifying a prior conviction," 133 S. Ct. at 2288, does not necessarily translate to *Park* or other guidelines cases. For this reason, if *Descamps* does prompt reconsideration of this

20

circuit's law applying the categorical method, the Court of Appeals might or might not reconsider its application of the residual clause, and it might also preserve *Park* and other, similar cases by distinguishing *Descamps* from *Park* as *Apprendi* is distinguished from *Booker*.

Second, *Park* is given increased weight by several other circuit cases employing similar reasoning. Second-degree burglary under Arizona law and under Missouri law are "violent felonies" under the residual clause of the ACCA, *see United States v. Terrell*, 593 F.3d 1084, 1091-95 (9th Cir. 2010), as are first-degree burglary convictions in Oregon, *United States v. Mayer*, 560 F.3d 948, 958-63 (9th Cir. 2009). If *Park* were a lone outlier in circuit law, lacking significant support in circuit precedent and in subsequent development, it would be a less momentous matter to find its reasoning "clearly irreconcilable" with *Descamps*. As it is, however, the weight of other authority both behind and from *Park* further counsels against a district court's finding that *Descamps* so "undercut[s] the theory or reasoning underlying the prior circuit precedent" as to be "clearly irreconcilable" with it.

### E. Conclusion

Because *Descamps* does not address the residual clause at all, this Court could apply it to Bell's case only by also reaching out to reject the Court of Appeals' reading and application of *James* and *Begay* in *Park*, *Terrell*, *Mayer*, and

numerous other instances. Perhaps the Court of Appeals may one day conclude[5]

their rejection is advisable in light of *Descamps*, *see* 133 S. Ct. at 2293 n.6, but

their rejection is not mandated by *Descamps*. The reasoning of *Park*, applying

categorical analysis under the residual clause of U.S.S.G. § 4B1.2(a)(2), is not

"clearly irreconcilable" with the Supreme Court's decision in *Descamps*, applying

categorical analysis to a divisible statute and a generic enumerated offense under

18 U.S.C. § 924(e)(2)(B)(ii). This Court may not depart from the law of the circuit

or the law of the case. Bell's claim must be denied.

## V. Certificate of Appealability

Reasonable jurists could reach a different conclusion. The questions posed

by Bell's case are adequate to support appeal. *Miller-El v. Cockrell*, 537 U.S. 322,

327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); 28 U.S.C. §

2253(c)(2). A certificate of appealability will be granted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Bell's motion under 28 U.S.C. § 2255 (Doc. 109) is DENIED based on

the law of the circuit and the law of the case;

2. A certificate of appealability is GRANTED as to all issues resolved in this

---

[5] Petitions for rehearing en banc were filed in both *Terrell* and *Mayer*. They were denied. *See, e.g., Terrell*, 621 F.3d 1154, 1155-61 (9th Cir. 2010) (M. Smith, J., dissenting from denial of reh'g en banc); *Mayer*, 560 F.3d at 951-54 (Kozinski, C.J., dissenting from denial of reh'g en banc). Thus, the appellate court has already thought twice about whether these panel decisions should be the law of the circuit .

Order. The Clerk of Court shall immediately process the appeal if Bell files a

Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and

in CV 13-47-H-DWM are terminated and shall close the civil file by entering

judgment in favor of the United States and against Bell.

DATED this 25th day of November, 2013.

Donald W. Molloy
United States District Court